**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

7305 COMMERCIAL LLC,

      Plaintiff,

v.

FLORIDA DEPARTMENT OF
HIGHWAY SAFETY AND
MOTOR VEHICLES, AND DAVE
KERNER, in his official capacity as
Executive Director of the Florida
Department of Highway Safety and
Motor Vehicles.

      Defendants.

CASE NO.  4:25CV356-RH-MAF

## FIRST AMENDED COMPLAINT

Plaintiff 7305 Commercial LLC ("Owner"), by and through undersigned counsel, files this First Amended Complaint against Defendant Florida Department of Highway Safety and Motor Vehicles ( the "FLHSMV") and Defendant Dave Kerner, in his official capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles (the "Executive Director") (collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1.     Owner acquired property located at 7305 Commercial Circle, Fort Pierce, Florida, 34951 (the "Property") with the express purpose of building a multi-tenant auto-dealer campus. Under Florida law, specifically Fla. Stat. § 320.27 and the implementing regulation, Fla. Admin. Code r. 15C-7.003 ("Rule 15C-7.003"), there is no numerical limit on how many separately licensed dealers may co-locate on a single property so long as the facility meets the location, signage, and parking requirements set forth in the rule.

2.     Shortly after completing renovations and installing required monument signage at the Property, Owner entered leases with more than twenty independent car dealers, each of whom timely applied to FLHSMV to allocate its dealer license with the Property.

3.     Rather than approving these dealer applications, senior FLHSMV officials denied or indefinitely delayed the requested license transfers and/or applications, first citing "ongoing renovations" and then imposing arbitrary, unwritten "caps" on the number of dealers that could use the campus. These limits have no basis in statute, rule, or the agency's written policy, and FLHSMV repeatedly refused to provide written denial notices or to hold formal administrative hearings despite multiple requests.

4.    In some instances, FLHSMV officials told dealers to seek another location, directly interfering with and injuring Owner's business relationships with such dealers.

5.    For example, Premium Auto Sales LLC ("Premium Auto"), one such licensed independent motor vehicle dealer, submitted a completed formal application to transfer its dealer license to the Property. FLHSMV responded only with an informal email stating that its transfer would not be approved, never issuing a written denial or advising Premium Auto of any right to a hearing as required by Fla. Stat. §§ 120.60 and 120.569, and further directing Premium Auto to "find another site."

6.    As a direct result of FLHSMV's actions, Owner has been unable to realize the Property's intended economic and community benefits, while similarly situated properties in Orlando and elsewhere in the state routinely house dozens of dealers without objection.

7.    Owner seeks prospective declaratory and injunctive relief: (1) declaring that the Executive Director's enforcement of unwritten numerical "dealer caps" at the Property and his refusal to issue written decisions on dealer-license applications for the Property violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment; and (2) permanently enjoining enforcement of any unwritten numerical caps at the Property including by requiring the Executive Director to lawfully and timely process dealer-license applications associated with the Property in compliance

with the Due Process Clause of the Fourteenth Amendment and applicable procedural requirements.

## PARTIES, JURISDICTION, AND VENUE

8.      Owner is a Florida limited liability company with its principal place of business in Fort Pierce, Florida. Owner is the fee simple owner of the Property and landlord to tenant motor vehicle dealers.

9.      FLHSMV is an executive-branch agency of the State of Florida, created pursuant to Fla. Stat. § 20.24, and headquartered in Tallahassee.

10.     Defendant Dave Kerner is the Executive Director of the FLHSMV. The Executive Director is responsible for the administration and enforcement of Fla. Stat. § 320.27, Rule 15C-7.003, and the dealer-licensing and site approval requirements challenged in this action.

11.     The Executive Director is sued solely in his official capacity for prospective declaratory and injunctive relief under 42 U.S.C. § 1983 to enjoin ongoing violations of federal law, consistent with Ex parte Young, 209 U.S. 123 (1908).

12.     FLHSMV may be served via the State Attorney for the Second Judicial Circuit (State Attorney's Office, Leon County, 301 South Monroe Street, Suite 475, Tallahassee, FL 32301) and by certified mail to the Executive Director, FLHSMV (2900 Apalachee Parkway, MS 01, Tallahassee, FL 32399) and the Attorney General (PL-01 The Capitol, Tallahassee, FL 32399-1050) per Fla. Stat. § 48.121(1).

13. The Executive Director may be served via the State Attorney for the Second Judicial Circuit (State Attorney's Office, Leon County, 301 South Monroe Street, Suite 475, Tallahassee, FL 32301) and by certified mail to the Executive Director, FLHSMV (2900 Apalachee Parkway, MS 01, Tallahassee, FL 32399) and the Attorney General (PL-01 The Capitol, Tallahassee, FL 32399-1050) per Fla. Stat. § 48.121(1).

14. Federal-question and civil-rights jurisdiction exists under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1988. Owner's claims arise under the Fourteenth Amendment to the U.S. Constitution.

15. Owner has Article III standing because Defendants' arbitrary and unlawful conduct has directly injured Owner in its own right. Owner acquired and improved the Property for the specific, legally permissible use of operating a multi-tenant auto-dealer campus, and Defendants have imposed site-specific restrictions on the Property that are inconsistent with the treatment of other comparable properties used for the same purpose. As a result of Defendants' conduct, the Property has been declared "no longer compliant," dealers have been directed elsewhere, dealer-license applications associated with the Property have been capped or refused, and Owner has suffered and continues to suffer lost rents, lost tenants, and a substantial diminution in the value and utility of the Property. These injuries are concrete, particularized, and ongoing.

16.    Owner's injuries are fairly traceable to Defendants' challenged policies and actions—specifically, the site-specific numerical cap imposed at the Property, the declaration that the Property is "no longer compliant," and the refusal to issue written decisions on dealer-license applications associated with the Property. Those actions are directed at the Property itself and at Owner, as the party who purchased, improved, and leased the Property for use as a multi-tenant auto-dealer campus, and they operate as a regulatory barrier to Owner's intended use of its Property.

17.    Owner's injuries would be redressed by the prospective declaratory and injunctive relief requested in this action. A declaration that the Executive Director's site-specific numerical cap and "non-compliance" designation violate the Fourteenth Amendment, coupled with an injunction prohibiting enforcement of any unwritten numerical caps at the Property and requiring lawful processing and written disposition of dealer-license applications associated with the Property under the same criteria applied to similarly situated sites, would remove the regulatory barrier that currently prevents Owner from using the Property as a multi-tenant auto-dealer campus and from realizing the economic benefits of its leases and improvements.

18.    Venue is proper in this District under 28 U.S.C. § 1391(b) and Fla. Stat. § 47.011 because FLHSMV's headquarters is located in this District and a substantial part of the events or omissions giving rise to Owner's claims occurred here.

19.    The declaratory and injunctive relief requested is fully authorized under federal law, including Ex parte Young, 209 U.S. 123 (1908).

## FACTUAL ALLEGATIONS

*A. Property Acquisition & Initial License Transfers*

20.    On May 12, 2023, Owner purchased the Property, an approximately two-acre site improved with an existing industrial building with approximately 15,000 square feet, with the intent to develop a multi-tenant auto-dealer campus.

21.    Florida motor vehicle dealers are governed by Fla. Stat. § 320.27 and Rule 15C-7.003.

22.    Rule 15C-7.003, among other things, sets forth requirements for the place of business and the location standards and operational requirements for motor vehicle dealerships.

23.    Neither the statute nor the rule imposes any numerical limit on co-location of dealerships at a compliant site.

24.    The economic viability of the Property as a multi-tenant auto-dealer campus depends on FLHSMV's willingness to approve dealer-license transfers and applications for the Property. Absent such approvals, the Property cannot be used for its intended purpose and Owner cannot perform or benefit from the leases it has executed with independent motor vehicle dealers.

25.    In June 2023, Owner leased space to N&N Car Sales and MotorMall, each of which promptly applied to transfer its existing dealership license to the Property.

26.    FLHSMV Senior Compliance Analyst Duane Daney denied both transfer requests, citing "ongoing renovations" at the Property and suggesting he was sparing Owner from "difficult tenants."

B. *Arbitrary Dealer Caps*

27.    After completing renovations in September 2023, FLHSMV approved only N&N's transfer and delayed MotorMall's, citing alleged paperwork defects.

28.    Mr. Daney then instructed Owner's manager, Grant Leroux, to install a monument sign, assuring him that once installed, the Property could be "filled up." Owner complied immediately.

29.    Within two weeks, Owner contracted with approximately twenty additional dealers (including Caspi Auto Sales, Connect Auto Lenders, MJ Auto Lease, Ocean Auto Sales, Seabreeze Auto, and South Florida Auto Sales), each of whom promptly applied for a license at the Property.

30.    On October 6, 2023, Mr. Daney informed Mr. Leroux that FLHSMV would approve only "three or four dealers" at the Property, not for any compliance deficiency, but allegedly to avoid "confusing" customers.

31. Beginning October 9, 2023, FLHSMV directed prospective tenants to seek locations other than the Property.

32. When Mr. Leroux demanded an explanation, Mr. Daney scheduled a joint inspection with Teresa Pedroso, Services Manager for FLHSMV, for October 12, 2023.

33. At that inspection, Ms. Pedroso invoked the same spurious "confusion" rationale, this time capping occupancy at six dealers, yet she refused to issue any written denial of additional dealers or provide a rationale for the numeric limitation.

C. *Continued Denials*

34. On October 20, 2023, Ms. Pedroso reconfirmed by telephone the imposition of an arbitrary six-tenant limit, but again refusing to memorialize any findings in writing.

35. Prospective dealers whose applications were denied for the Property demanded return of their security deposits from Owner.

36. On October 26, 2023, Mr. Leroux emailed Mr. Daney seeking a written rationale for any alleged noncompliance with Rule 15C-7.003.

37. FLHSMV refused to respond or provide any further information.

38. Around October 31, 2023, Mr. Daney notified the four pending and two already approved dealers that the Property was "no longer compliant," without identifying any specific rule or requirement.

39. Owner retained counsel and sent FLHSMV a demand letter requesting formal findings and acceptance of the pending license applications.

40. In response, on November 1, 2023, FLHSMV's counsel admitted he lacked firsthand evidence of noncompliance, relying instead on secondhand "signage issue" reports.

41. FLHSMV's counsel advised that the dealers could request a formal "Dealer Conference" once a specified monument sign was installed.

42. Hours later, however, Mr. Daney informed all pending applicants that, regardless of any conference, "nobody will be approved" at the Property, circumventing the written denial requirement under Fla. Stat. § 120.60. Mr. Daney's statements reflected the policy and practice of the Executive Director and FLHSMV in administering dealer-license transfers and applications to the Property.

43. Mr. Leroux immediately documented full signage compliance and detailed Owner's losses to FLHSMV employees Kyle Cockream and Brett Saunders.

44. Subsequently, FLHSMV's attorney, Daniel Biggins, identified only two minor alleged issues at the Property, specifically, separate mailing addresses and street-visible signage, both of which Owner cured by November 2024 after months of back and forth with FLHSMV.

45. Despite these corrections, FLHSMV continues to improperly deny or refuse to process dealer applications for the Property to this day.

46. On June 6, 2025, undersigned counsel sent Mr. Biggins, Mr. Daney, Ms. Pedroso, FLHSMV, and Florida Department of Financial Services, a notice of claim under Fla. Stat. § 768.28 outlining these issues and demanding action. A true and correct copy of that letter is attached hereto as Exhibit 1.

47. On August 7, 2025, undersigned counsel sent a second letter to the same recipients attaching a draft of the complaint Owner intended to file within ten (10) days absent a response. A true and correct copy of that letter, without the draft complaint, is attached hereto as Exhibit 2.

48. FLHSMV did not respond to either communication, and accordingly Owner filed its original Complaint on August 19, 2025.

D. *Disparate Treatment of Similarly Situated Properties*

49. FLHSMV permits other, similarly situated properties to house more than fifty dealers at a single site without objection.

50. For example, JustUS Orlando, an industrial property located at 18580 E. Colonial Drive, Orlando, Florida, 32820, operates as an approved multi-tenant auto-dealer and currently houses more than fifty auto-dealers with no challenge from FLHSMV.

51. Upon information and belief, JustUS Orlando, like the Property, was purposely developed to operate as a multi-tenant auto-dealer campus.

-11-

52.     Upon information and belief, both JustUS Orlando and the Property meet all the material property and operational requirements identified in Rule 15C-7.003, including but not limited to maintaining separate, enclosed office space for each dealer; providing compliant, dedicated display space for each dealer; and complying with the same location, signage, parking, and visibility criteria that FLHSMV applies when inspecting and approving multi-tenant dealer campuses.

53.     There is no material distinction between the Property and JustUS Orlando under Rule 15C-7.003 that could justify FLHSMV's imposition of a numerical cap, "non-compliance" designation, or refusal to process dealer-license applications at the Property whole allowing dozens of dealers to operate without restriction at JustUS Orlando.

*E. Exhaustion of Administrative Remedies, If Any*

54.     Owner has repeatedly demanded written rulings on each outstanding license application, but FLHSMV has refused to issue them.

55.     There are no constitutionally adequate administrative remedies available to Owner; alternatively, all administrative remedies have been exhausted or would otherwise prove futile.

*F. Premium Auto's Application and Informal Email Denial*

56.     In April 2025, Premium Auto executed a written lease with Owner for a dedicated showroom and office space at the Property. Premium Auto's lease

obligations were expressly conditioned on its ability to transfer its existing dealer license to the Property.

57.    On or about April 3, 2025, Premium Auto submitted a completed application on HSMV Form 86072 to transfer its independent motor vehicle dealer license to the Property, fully satisfying all requirements in Rule 15C-7.003.

58.    On June 10, 2025, FLHSMV, through an email from Antonio P. Encarnacao, informed Premium Auto that its application would not be approved because the Property does not meet the requirements for a used car dealership. He then directed Premium Auto to "find another site."

59.    FLHSMV never issued Premium Auto a written order or written denial of its transfer request as required by Fla. Stat. § 120.60(3), never advised Premium Auto of any right to an administrative hearing under Fla. Stat. § 120.569, and never identified any valid statutory or regulatory basis for denying Premium Auto's application.

60.    As a result of FLHSMV's informal email denial and ongoing refusal to issue a written decision, Premium Auto, like other dealers, has been unable to relocate its license to the Property, has lost the ability to operate in the location for which it contracted, and has suffered, and continues to suffer, lost profits, sunk relocation costs, and damage to its business.

61.     FLHSMV's treatment of Owner, the Property, and prospective dealers at the Property stands in contrast to its treatment of similarly situated dealers at other multi-tenant auto dealer campuses, including JustUS Orlando, where FLHSMV allows dozens of dealers to operate without any numerical cap.

62.     Owner has performed all conditions precedent to bringing this suit, or such conditions have been waived or excused by FLHSMV's refusal to issue written decisions on dealer-license applications for the Property.

**COUNT I:**
**VIOLATION OF EQUAL PROTECTION, U.S. CONST. AMEND. XIV; 42 U.S.C. § 1983 (AGAINST DEFENDANTS)**

63.     Owner re-alleges and incorporates by reference the allegations in Paragraphs 1 – 62 above as if fully set forth herein.

64.     Under 42 U.S.C. § 1983, Owner seeks declaratory and injunctive relief against the Defendants for violations of the Equal Protection Clause of the Fourteenth Amendment.

65.     The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

66.     Under 42 U.S.C. § 1983, actions are authorized against any person who deprives another of rights secured by the Constitution under color of state law.

67.     The Executive Director, acting under color of state law through

FLHSMV officers and employees, including Mr. Daney, Mr. Encarnacao, and Ms. Pedroso, is responsible for and has direct supervisory authority over the enforcement of Fla. Stat. § 320.27 and Rule 15C-7.003 and, through those officers and employees, has enforced them in an arbitrary and discriminatory fashion as to Owner and the Property.

68.    Although Rule 15C-7.003 contains no co-location cap, FLHSMV imposed an unwritten limit of three to four dealers (later changed to six) at the Property solely to "avoid confusion" and then refused to process or approve additional compliant dealer applications, including Premium Auto's application without any statutory or regulatory basis.

69.    FLHSMV's conduct, as implemented and supervised by the Executive Director, treats Owner differently from other similarly situated property owners who have received approval to co-locate dozens of dealers—*e.g.*, JustUS Orlando (18580 E. Colonial Drive, Orlando, FL 32820), which currently operates with over fifty dealers on one campus under the same statutory and regulatory framework and the same Rule 15C-7.003 criteria.

70.    This disparate treatment is intentional and reflects animus toward Owner, Owner's Property, and Owner's proposed tenants such as Premium Auto, who seek to operate there.

71.    There is no rational basis for imposing a dealer cap on Owner's fully compliant Property and for refusing to process dealer applications associated with that Property, while permitting other, materially indistinguishable sites and dealers to operate with fifty or more licenses.

72.    As a direct result of the Executive Director's unequal application, through FLHSMV officers and employees, of Rule 15C-7.003 and related licensing rules, Owner has suffered—and continues to suffer—lost rents, lost tenants, and impairment of the economic use and value of the Property.

73.    Owner has no adequate remedy at law to redress these ongoing constitutional violations and faces a present, actual controversy warranting declaratory and injunctive relief.

74.    All interested parties are properly before this Court, and the relief sought will vindicate not only Owner's rights but also the public interest in the neutral and nondiscriminatory application of the law.

75.    By reason of the foregoing, Owner is entitled to declaratory and injunctive relief as the Court deems just and proper.

<u>**COUNT II:**</u>
<u>**REQUEST FOR DECLARATORY RELIEF**</u>
<u>**(28 U.S.C. §§ 2201-2202) (AGAINST DEFENDANTS)**</u>

76.    Owner re-alleges and incorporates by reference Paragraphs 1–62 above as if fully set forth herein.

77. An actual, present controversy exists between Owner and the Defendants regarding whether the imposition and enforcement of an unwritten numerical cap on dealers at the Property, refusal to issue written decisions, and disparate treatment of Owner relative to similarly situated properties and dealers violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

78. This Court has authority under 28 U.S.C. §§ 2201-2202 to declare the rights and legal relations of the parties with respect to these federal constitutional questions.

79. A declaratory judgment will serve a useful purpose in clarifying and settling the parties' legal relations and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

80. Owner is entitled to a declaratory judgment that the Executive Director's challenged conduct as implemented through FLHSMV officers and employees, violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment for the reasons set forth in Count I.

81. Owner is entitled to a declaration that:

a. The Defendants' imposition and enforcement of an unwritten numerical cap on the number of dealers at the Property, and the arbitrary refusal to process or approve additional compliant dealer applications including Premium Auto's as a tenant, lack any rational basis and violate

-17-

the Equal Protection Clause of the Fourteenth Amendment, and are arbitrary, capricious, and inconsistent with the Equal Protection Clause; and

b.      The Defendants' refusal to timely process, approve, or issue written decisions on fully compliant dealer-license applications for the Property, and the use of informal email communications to communicate denials without notice of hearing rights, deprives Owner and affected dealers of their liberty and property interests without due process of law in violation of the Fourteenth Amendment.

## PRAYER FOR RELIEF

**WHEREFORE**, Owner respectfully requests that this Court enter judgment in its favor and grant the following relief:

1. Declaratory Relief

   a. Declare that the Defendants' enforcement of unwritten "dealer caps" at the Property violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and is actionable under 42 U.S.C. § 1983;

   b. Declare that the Defendants' refusal to issue written decisions on dealer license applications for the Property, including Premium Auto's completed application as a tenant, and his reliance on informal email

communications to communicate denials violate the Due Process Clause of the Fourteenth Amendment.

2. Injunctive Relief

    a. Permanently enjoin the Defendants together with their officers, employees, agents, and all persons acting in concert with them, from enforcing any unwritten "caps" on the number of dealer licenses at the Property;

    b. Order the Defendants to process and adjudicate Premium Auto's dealer license transfer application, and all other pending dealer-license applications for the Property, under the same standard applied to similarly situated properties and dealers;

    c. Require the Defendants to issue any necessary written notices, findings, or orders on dealer-license applications in compliance with the procedures required by the Due Process Clause of the Fourteenth Amendment;

    d. Award Owner its reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law;

3. Grant Owner such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Owner demands a trial by jury on all claims so triable.

This 20th day of November, 2025.

Respectfully submitted,

*/s/ Ryan T. Pumpian*
Ryan T. Pumpian
Florida Bar No. 156220
Primary:  rpumpian@bloom-law.com
Secondary:  eirving@bloom-law.com

BLOOM PARHAM, LLP
977 Ponce de Leon Avenue, N.E.
Atlanta, GA  30306
Telephone:  (404) 577-7710
Facsimile:  (404) 577-7715

*Counsel for Plaintiff*

# Exhibit 1



Ryan T. Pumpian
rpumpian@bloom-law.com
404.577.7710

June 6, 2025

**VIA E-MAIL, CERTIFIED MAIL**
**& FEDERAL EXPRESS -**
**OVERNIGHT DELIVERY**
(*DanielBiggins@flhsmv.gov*)
(*DuaneDaney@flhsmv.gov*)
(*TeresaPedroso@flhsmv.gov*)

Florida Department of Financial Services
Division of Risk Management
200 E. Gaines Street
Tallahassee, FL 32399-0338

Florida Department of Highway Safety and Motor Vehicles
General Counsel's Office
2900 Apalachee Parkway, MS#2
Tallahassee, FL 32399-0504

> Re:   *Notice of Claim Under Fla. Stat. § 768.28 for Tortious Interference and violation of Constitutional Rights under 42 U.S.C. § 1983 and Request for Relief*

Dear Mr. Biggins, Mr. Daney, and Ms. Pedroso:

This firm represents 7305 Commercial LLC ("Owner"),[1] which owns real property located at 7305 Commercial Circle, Fort Pierce, Florida 34951 (the "Property"). Please accept this letter as notice under Fla. Stat. § 768.28(6) of Owner's claims against the Florida Department of Highway Safety and Motor Vehicles (the "FLHSMV") related to Owner's use of the Property and Owner's request for the relief specified herein.

As detailed below, the FLHSMV has arbitrarily denied multiple applications for dealership licenses from tenants and prospective tenants of Owner despite such tenants fully complying with all applicable rules and regulations. Such denials are the result of selective and capricious enforcement of Fla. Admin. Code Ann. r. 15C-7.003 ("Rule 15C-7.003"), including the imposition of arbitrary caps on the number of dealer tenants Owner may allow on the Property. These denials violate both the letter and spirit of the regulations. Moreover, FLHSMV employees, specifically Mr. Daney and Ms. Pedroso, have made false, defamatory, and disparaging statements about Owner and the Property and have subjected tenants to persistent harassment, inflicting measurable harm on our

---

[1] Owner's Federal Employer Identification Number is 92-3536684. Fla. Stat. § 768.28(6)(c).

client's reputation and business. <u>This conduct has resulted in damages of approximately $300,000 in lost rent and $2,571,000 in lost value to the Property.</u>

Accordingly, Owner demands that FLHSMV (1) cease applying Rule 15C-7.003 arbitrarily or discriminatorily, (2) retract all defamatory statements and refrain from further disparagement, (3) promptly issue any outstanding dealership permits to applicants who meet the statutory and regulatory criteria, (4) stop harassing current and prospective tenants of the Property, and (5) pay $2,871,000 in damages. If FLHSMV fails to comply, Owner will seek all available relief, including attorneys' fees and injunctive remedies, without further notice.[2]

## I.    Factual Overview

1.    <u>Timeline of Events</u>

### a.    *Licensing Delays and Renovation Pretext*

On May 12, 2023, Owner acquired the Property with the express purpose of leasing space to motor-vehicle dealers. In June 2023, Owner executed leases with N&N Car Sales and MotorMall, each of which immediately applied to transfer their licenses to the Property. Without any lawful basis, Mr. Daney, on behalf of the FLHSMV, refused those transfers, citing "ongoing renovations" and claiming he was doing Owner a favor by sparing them "difficult tenants." When renovations concluded in September 2023, N&N's transfer was approved, but MotorMall's was delayed for alleged paperwork defects. Mr. Daney then told Grant Leroux, Manager of Owner, to install a monument sign and that once the sign was in place, the Property could be "filled up."

### b.    *Shifting Numeric Caps and Arbitrary Limits*

Over the ensuing two weeks, Owner signed approximately twenty additional dealers (including Caspi Auto Sales, Connect Auto Lenders, MJ Auto Lease, Ocean Auto Sales, Seabreeze Auto, and South Florida Auto Sales), all of whom promptly applied for license transfer. On October 6, 2023, Mr. Daney informed Mr. Leroux that the FLHSMV would approve only "three or four dealers" at the Property, not for any compliance deficiency, but allegedly to avoid "confusing" customers. Beginning October 9, prospective tenants were told by the FLHSMV to find other locations immediately as they were only going to allow three or four tenants at the Property. When Mr. Leroux demanded an explanation, Mr. Daney scheduled a joint inspection with Ms. Pedroso for October 12. At that inspection, Ms. Pedroso invoked the same spurious "confusion" rationale to cap occupancy at six dealers, yet she refused to issue any written denial of additional dealers or explanation for the cap. By October 20, she reconfirmed the six-tenant limit by phone, again refusing to provide any formal documentation, while unapproved dealers were simply instructed to relocate. Those dealers promptly

---

[2] There exists no prior adjudicated unpaid claim against Owner. Fla. Stat. § 768.28(6)(c).

DFS and FLHSMV
c/o Daniel Biggins, Esq.
June 6, 2025
Page 3

demanded security deposit refunds from Owner. Days later, Mr. Daney e-mailed the four pending and two already licensed dealers, declaring the Property "no longer compliant" without explaining why.

### c. Signage Pretext and Continued Abuse

On November 1, 2023, the FLHSMV's attorney admitted he possessed no firsthand evidence of noncompliance but relied on secondhand "signage issue" reports. The attorney advised that upon installation of a specific monument sign, the dealers could request a formal "Dealer Conference." Hours later, Mr. Daney told all pending applicants that, despite any conference, "nobody will be approved" at the Property, circumventing the written denial requirement under Fla. Stat. § 120.60.[3] Mr. Leroux immediately documented full signage compliance and detailed the resulting losses to FLHSMV employees Kyle Cockream and Brett Saunders.[4] Thereafter, Mr. Daney launched daily "spot" inspections of N&N, decrying its display spaces as "insufficient" and intimating its license would be revoked. Despite knowledge of these actions, FLHSMV did nothing.[5] FLHSMV attorney Daniel Biggins ultimately identified only two tangible issues at the Property, specifically, separate mailing addresses and street-visible signage, both of which Owner cured by November 2024, thereby rendering the Property in full compliance with all statutory and regulatory requirements. Yet, the arbitrary denials and harassment persisted.

### 2. Defamatory and Disparaging Statements and Harassment

Over the past six plus months, Mr. Daney and Ms. Pedroso have repeatedly and publicly asserted that the Property fails to satisfy Rule 15C-7.003, despite possessing full documentation that it complies. These knowingly false statements, disseminated to countless current and prospective tenants, meet the legal standard for disparagement with actual malice and have inflicted reputational harm on Owner and the Property.

In addition to imposing arbitrary licensing caps, defaming Owner, and disparaging the Property, FLHSMV employees have subjected current and prospective tenants to hostile, aggressive treatment, including intrusive document demands, unannounced "spot" inspections, and veiled threats of license revocation. This pattern of conduct has driven numerous qualified dealers away, causing Owner to lose substantial rental income

---

[3] Owner will provide a copy of one such voicemail recording upon request.
[4] A copy of the e-mail is attached hereto as Exhibit A.
[5] A copy of the e-mail is attached hereto as Exhibit B.

and undermining the Property's value and marketability. Such behavior is unacceptable, unlawful, and must cease immediately.

## II. Causes of Action

FLHSMV's conduct provides grounds for numerous causes of action against FLHSMV, including but not necessarily limited to:

1. Tortious Interference with Business Relationships:

The FLHSMV's unjustified license denials have directly and wrongfully interfered with both existing and prospective business relationships between Owner and its intended dealership tenants, resulting in substantial loss of rental income and reduction in the fair market value of the Property. Under Florida law, a cause of action for tortious interference with a business relationship requires proof of (1) the existence of a business relationship, (2) the defendant's knowledge of the relationship, (3) intentional and unjustified interference by the defendant, and (4) resulting damage to the plaintiff. (Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)). Here, all four elements are indisputably satisfied:

### a. Existence of Business Relationships

Between September and October 2023, Owner entered into fully negotiated leases with over twenty qualified motor-vehicle dealers, each of whom applied to obtain or transfer their dealer licenses to the Property under Rule 15C-7.003.

### b. Knowledge by the FLHSMV

Mr. Daney and Ms. Pedroso, acting on behalf of the FLHSMV, were repeatedly and explicitly notified of each pending transfer. On October 6, 2023, Mr. Daney informed Owner's Manager, Grant Leroux, that only "three or four" dealers would be allowed. On October 20 and in subsequent calls, Ms. Pedroso confirmed a cap of six dealers, demonstrating clear awareness of the contractual relationships at issue.

### c. Intentional, Unjustified Interference

The FLHSMV's imposition of shifting numeric caps (three, four, or six dealers) has no basis in the Florida Statutes or Administrative Code, which permit unlimited co-location so long as each dealer maintains the required office, display, barrier, and signage standards. Yet, Mr. Daney and Ms. Pedroso intentionally obstructed access to the Property, instructed approved tenants to vacate without written denial, and refused to

explain in writing the basis for their arbitrarily imposed limits – all of which constitutes unlawful conduct calculated to derail Owner's leasing program.

### d. Resulting Damages

As a direct consequence of these arbitrary and unauthorized restrictions, Owner has lost hundreds of thousands of dollars in rental revenue, incurred significant additional carrying costs, and experienced a material decline in the Property's value. Moreover, the continued administrative harassment has discouraged other prospective tenants, further depressing income and marketability.

## 2. Claims Arising Under 42 U.S.C. § 1983

FLHSMV employees Mr. Daney, Mr. Cockream, and Ms. Pedroso, acting under color of law, violated Owner's constitutional rights when they administered dealer licenses arbitrarily. Under 42 U.S.C. § 1983, a plaintiff may sue the government by showing (1) the deprivation of a federal right and (2) that the deprivation was committed under color of state law. (Gomez v. Toledo, 446 U.S. 635 (1980)). Both elements are easily met here. These state actors deprived Owner of its Fourteenth Amendment equal protection and procedural and substantive due-process rights by exercising state-delegated authority to impose unsupported numeric caps and deny licenses without justification.

### a. Procedural Due-Process Violation

Under the Fourteenth Amendment, procedural due process requires the government to give notice and a meaningful opportunity to be heard before depriving a person of his protected interest (Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). To prevail on an as-applied procedural-due-process claim, a plaintiff must show (1) a protected property interest; (2) state action; and (3) constitutionally inadequate process (Grayden v. Rhodes, 345 F.3d 1231, 1232 (11th Cir. 2003)).

Here, Owner possessed a statutory entitlement to house motor-vehicle dealers at the Property under Fla. Stat. § 320.27 and Rule 15C-7.003, and FLHSMV officials clearly acted under color of state law when processing dealer applications. Florida law mandates that any denial of agency action be in writing, stating the grounds for denial and informing the applicant of its appeal rights (Fla. Stat. § 120.60(3)). FLHSMV, however, consistently failed to comply with these requirements, thereby denying Owner due process. More specifically, by denying applications solely by phone, in direct contravention of

Fla. Stat. § 320.27, and applying arbitrary caps, FLHSMV deprived Owner of both the notice and hearing guaranteed by the Fourteenth Amendment.

### b. Substantive Due-Process & Equal Protection Violation

Substantive due process prohibits arbitrary and irrational governmental action, and the Equal Protection Clause bars a state from treating similarly situated parties differently without at least a rational basis. (Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1374 (11th Cir. 1993); Village of Willowbrook v. Olech, 528 U.S. 562 (2000)). Here, 7305 Commercial held a clear statutory right to lease its premises for motor-vehicle sales under Fla. Stat. § 320.27 and Rule 15C-7.003, which expressly permits unlimited co-location so long as each dealer maintains the required office, display, barrier, and signage standards.

FLHSMV's enforcement fell far short of these constitutional mandates. Officials repeatedly invoked meritless pretexts citing "customer confusion" and "signage issues" without any factual support or regulatory authority and imposed an arbitrary six-dealer cap, even though larger multi-tenant sites operate lawfully. Mr. Daney's unsupported assertion that the Property "doesn't comply" and Ms. Pedroso's unexplained numerical limitation bear no relation to any statutory or regulatory requirement and serve no legitimate health, safety, welfare, or community-well-being purpose.

By exercising unfettered discretion untethered to objective criteria, FLHSMV not only committed an irrational abuse of power in violation of substantive due process but also singled out Owner's property and its tenants for less favorable treatment than similarly situated dealer sites, all in breach of the Equal Protection Clause. Such capricious and discriminatory enforcement untethered to any legitimate state interest offends fundamental notions of fair government and violates both substantive due process and equal protection.

### c. Inverse Condemnation (Regulatory Taking):

Under Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124, (1978), a regulatory taking requires (1) significant economic impact, (2) interference with investment-backed expectations, and (3) character of government action. Here:

- Economic Impact: Owner lost tens of thousands of dollars per month in rental income from valid lessees who sat unlicensed;
- Expectation Interference: More than twenty fully executed leases, each compliant under Rule 15C-7.003, were rendered worthless by FLHSMV's shifting caps and refusal to honor them; and
- Character of Action: FLHSMV's targeted, arbitrary denials functionally barred Owner's only lawful use of its property, leasing to dealers, without any safety or zoning rationale and unrelated to any legitimate public purpose.

DFS and FLHSMV
c/o Daniel Biggins, Esq.
June 6, 2025
Page 7

By depriving Owner of the economic use of its Property, FLHSMV's actions constitute a taking under the Fifth and Fourteenth Amendments and Article X, § 6 of the Florida Constitution.

## III.    Conclusion

We trust you will give this matter your prompt and serious attention. If you would like to discuss, we would be happy to do so. Please direct all communications regarding this matter to my office.

Sincerely,

Ryan T. Pumpian

cc:    Grant LeRoux (*via e-mail only*)
       Simon H. Bloom

# Exhibit A

🗑 Delete     ▣ Archive     ⓘ Report ˅     ↩ Reply     ⬳ Reply all     ↗ Forward ˅     ✉ Read / Unread     ˅

## Fwd: Unresolved Issue with Region IX Compliance Officers    ⊕ ˅

**GL**  Grant LeRoux                                            ☺  ↩  ⬳  ↗  ⋯
To: SML Auto Sales <smlauto.sell37@gmail.com>                   Thu 11/2/2023 8:23 PM



🎵 voicemail-10753370080.m4a    ˅
607 KB

2 attachments (6 MB)   ⬇ Download all

Get Outlook for iOS

**From:** Grant LeRoux
**Sent:** Thursday, November 2, 2023 9:52:50 AM
**To:** Cockream, Kyle <KyleCockream@flhsmv.gov>
**Cc:** brettsaunders@flhsmv.gov <brettsaunders@flhsmv.gov>
**Subject:** Unresolved Issue with Region IX Compliance Officers

Kyle,

Thanks for taking the time to talk by phone yesterday. Just to follow up on our conversation, both you and your council stated that you have seen pictures of my building and property located at 7305 Commercial Circle in Ft. Pierce, and that it is the understanding of both you and your council that the property does not meet the Florida Statute for auto dealers due to a signage issue. However, there is a monument sign with space for 40 dealers at the property and I have attached a picture of it for your reference. Since it is possible that you have seen old photos of the property before the monument sign was installed, I will assume this is no longer an issue.

Furthermore, I was told by your council that your agency has no authority over my property, only the dealers, and therefore the dealers need to go through "The Proper Procedures". Your council stated that they should contact the local office and request a Dealer Conference and Site Review. When I contacted the dealers after our call and told them what they needed to do, they were immediately told the building does not comply for a laundry list of reasons. Attached is the voicemail left by Duane Daney following their request. Every dealer I have spoken with has also stated that Mr. Daney called and verbally told them this same thing. Clearly this request is a waste of their time. Teresa Pedrosa and Duane Daney have unexplainably dug in on their position.

Ms. Pedrosa and Mr. Daney have already proven that they will retaliate against anyone that questions their position, just as they did with my tenants on 10/31. Based on my conversations with 50 or 60 perspective tenants, there is a pattern to this behavior and it has become the norm in Region IX. All of these dealers are afraid to come forward for this very reason. However, I do not have the same restraint and this behavior is completely unacceptable. If you would like to discuss this matter further and try to come to an equitable resolution that will allow these dealers to operate in a location that clearly fills the requirements of Statute 15C-7.003, I am available all this week. If I do not hear from you by the close of business on Monday 10/6, I will have no option but to have my attorney file the appropriate paperwork. The unethical and unprofessional behavior of Teresa Pedrosa and Duane Daney is costing me hundreds of thousands of dollars in lost rents and millions of dollars in the loss of value in my property.

Regards,
Grant LeRoux
Managing Partner
7305 Commercial LLC
C: 678-315-6521

↩ **Reply**    ↗ **Forward**

# Exhibit B

## Update on continuing issuing with DMV behavior

Grant LeRoux <grant@hmrei.com>
Fri 11/3/2023 12:56 PM

To:Cockream, Kyle <KyleCockream@flhsmv.gov>
Cc:brettsaunders@flhsmv.gov <brettsaunders@flhsmv.gov>

   Good Afternoon!  Just to keep you aware of the on going situation, your compliance officer in Region IX, Mr. Duane Daney is continuing his harassment and intimidation of the tenants in my building.  Today he called one of my tenants on the phone and stated that he had been by the property everyday, and why was he not there? Where are his cars? He only has 2 spaces and how many cars in he selling online now?

   This is exactly the behavior that these dealers are worried about and makes my property unrentable.

Regards,
Grant LeRoux
7305 Commercial LLC
Managing Member
678-315-6521

# Exhibit 2



Ryan T. Pumpian
rpumpian@bloom-law.com
404.577.7710

August 7, 2025

**VIA FIRST CLASS MAIL**
**AND E-MAIL**
***(DanielBiggins@flhsmv.gov)***
***(DuaneDaney@flhsmv.gov)***
***(TeresaPedroso@flhsmv.gov)***

Florida Department of Financial Services
Division of Risk Management
200 E. Gaines Street
Tallahassee, FL 32399-0338

Florida Department of Highway Safety and Motor Vehicles
General Counsel's Office
2900 Apalachee Parkway, MS#2
Tallahassee, FL 32399-0504

> Re:    Notice of Lawsuit - 7305 Commercial LLC v. Florida Department of Highway Safety and Motor Vehicles

Dear Mr. Biggins,

As you know, this firm represents 7305 Commercial LLC ("Owner"), which owns the real property located at 7305 Commercial Circle, Fort Pierce, Florida 34951 (the "Property"). Enclosed is a courtesy copy of the Complaint Owner intends to file against Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") if this matter cannot be resolved **within ten (10) days of the date of this letter**.

Owner's claims arise from FLHSMV's wrongful denial of dealer-license applications for the Property, in violation of Owner's rights under both the United States and Florida Constitutions. We remain hopeful that FLHSMV will agree to meet and confer in good faith to avoid unnecessary litigation and expense.

If FLHSMV does not wish to engage in good faith discussions to resolve this dispute, please advise whether you will accept formal service of process on behalf of the FLHSMV.

We appreciate your prompt attention and look forward to your response.

DFS and FLHSMV<br>
c/o Daniel Biggins, Esq.<br>
August 7, 2025<br>
Page 2

Sincerely,

Ryan T. Pumpian

Enclosure

cc:    Mr. Grant LeRoux (*via e-mail only*)
       Simon H. Bloom, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that the opposing parties in the foregoing matter have been served with a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** by filing using the Court's e-filing system which will automatically send notification of such filing to the following attorneys of record:

Mason V. Petrosky
Assistant Attorney General
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Mason.Petrosky@myfloridalegal.com
Jamai.Watson@myfloridalegal.com
Laquion.Monroe@myfloridalegal.com
CivilLitigationNorth.eservice@myfloridalegal.com

This 20th day of November 2025.

/s/ Ryan T. Pumpian
Ryan T. Pumpian
Forida Bar No. 156220

BLOOM PARHAM, LLP
977 Ponce de Leon Avenue, NE
Atlanta, GA  30306-4265
Tel:   (404) 577-7710
Fax:   (404) 577-7715
rpumpian@bloom-law.com

*Counsel for Plaintiff*